UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MONARCH PRODUCTIONS, LLC, et al.   )
                                    )
        Plaintiffs,                 )
                                    )
    vs.                             )   Case No. 4:09CV02049 ERW
                                    )
ZEPHYR GRAFIX, INC., et al.,        )
                                    )
        Defendants.                 )

# MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction Pursuant to Rule 65(a) [doc. #5].

## I.  BACKGROUND

Plaintiffs Monarch Productions, LLC, Monarch Investor, LLC, and Dominant DNA, LLC *f/k/a* Mothwing, LLC (collectively "Plaintiffs") design and license camouflage patterns for use in the outdoor, sports, military, and fashion industries. Plaintiffs developed the "Mothwing Gameday pattern," which has white tree bark and brown leaves on a single-color backdrop. The single-color backdrop is designed to match the school colors of popular colleges and universities. Plaintiffs registered the pattern with the United States Copyright Office, and began working with Defendant Zephyr Grafix, Inc. to create hats and sell hats bearing the Mothwing Gameday pattern. Defendant L.H. Holdings, Inc. *d/b/a* Legendary Whitetails was one of the retailers that purchased the Mothwing Gameday hats.

The Mothwing Gameday hats were very successful. Plaintiffs were contacted by Defendant Barry Horn of Defendant A & E Group, LLC, who was interested in working with

Plaintiffs to expand the use of the Mothwing Gameday pattern beyond hats. Mark Kaiser of Defendant Legendary Whitetails also contacted Plaintiffs to discuss expanding the use of the Mothwing Gameday pattern. These Defendants did not reach any sort of agreement with Plaintiffs to expand the Mothwing Gameday line. Shortly thereafter, Defendant Legendary Whitetails began developing its own line of collegiate fashion camouflage, called "Big Game Camo." Defendants Zephyr Grafix, A & E Group, Legendary Whitetails, and Barry Horn (collectively, "Defendants") all play a role in the development and sale of merchandise that incorporates the Big Game Camo pattern.

On December 15, 2009, Plaintiffs filed a Complaint, alleging: copyright infringement against all Defendants; contributory copyright infringement against all Defendants; breach of contract against Defendant Zephyr Grafix; interference with business relation and expectancy against Defendants A & E Group, Legendary Whitetails, and Barry Horn; and violation of the Lanham Act and unfair competition against Defendants Zephyr Graphix and Legendary Whitetails. Shortly thereafter, on December 23, 2009, Plaintiffs filed the pending Motion for Preliminary Injunction, seeking an Order from this Court, "enjoining Defendants from manufacturing, printing, distributing, selling, offering for sale, advertising and/or promoting fabrics with designs that are based on, derived from and/or substantially similar to the Gameday patterns." (Mtn. for Prelim. Inj., doc. #5, p.1). The Court held a hearing on this matter on February 25, 2010, at which time the Parties presented oral arguments.

## II. LEGAL STANDARD

"'The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief.'" *Kansas City S. Trans. Co., Inc. v.*

*Teamsters Local Union #41*, 126 F.3d 1059, 1066-67 (8th Cir. 1997) (quoting *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984)). The relevant factors to be considered by a district court are: "(1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on the other interested parties; and (4) whether the issuance of an injunction is in the public interest." *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)). These four factors are often referred to as "the *Dataphase* factors."

"These factors are not a rigid formula. However, [t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" *Branstad v. Glickman*, 118 F. Supp. 2d 925, 938 (N.D. Iowa 2000) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)) (alteration in original). "'No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction.' . . . However, a party moving for a preliminary injunction is required to show the threat of irreparable harm." *Baker Elec. Co-Op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (quoting *Calvin Klein Cosmetics Corp. v. Lenox Lab.*, 815 F.2d 500, 503 (8th Cir. 1987)) . The burden of establishing that a preliminary injunction is warranted is on the party seeking the injunction. *Id.*

### III. DISCUSSION

The Court will now consider each of the *Dataphase* factors, to determine whether the issuance of a preliminary injunction is appropriate in this case.

## A. PROBABILITY OF SUCCESS ON THE MERITS

The first factor to consider is the likelihood that Plaintiffs will prevail on the merits of this case. In considering this factor, it is important to note that the Court is not deciding whether Plaintiffs will ultimately prevail in this case. *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991). Moreover, there is no requirement that Plaintiffs demonstrate that there is a greater than fifty percent likelihood that they will prevail. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). This is because "[t]he equitable nature of the proceeding mandates that the court's approach be flexible enough to encompass the particular circumstances of each case." *Id.*

This case involves a copyright infringement dispute. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Defendants do not dispute that Plaintiffs own valid copyrights on the Gameday Camo pattern. Thus, the only issue that the Court must address is whether Defendants copied constituent elements of the Mothwing Gameday pattern in creating their Big Game Camo pattern.

A party can use direct evidence to demonstrate that constituent elements of the original work were copied by the allegedly infringing work. When there is no direct evidence of copying, as in this case, "[c]opying may be established . . . by showing that the defendants had access to the copyrighted materials and showing that substantial similarity of ideas and expression existed between the alleged infringing materials and the copyrighted materials." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006) (citing *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117,

4

120 (8th Cir. 1987)). Defendants do not dispute that they had access to the copyrighted materials, so this Court need only examine the substantial similarity issue.

In examining the substantial similarity issue, *Hartman* instructs the Court to employ a two-step analysis. "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works." *Hartman*, 833 F.2d at 120. The extrinsic test considers "'such objective criteria as the type of artwork involved, the materials used, the subject matter, and the setting for the subject.'" *Rottlund Co.*, 452 F.3d at 731 (quoting *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989)). "Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Hartman*, 833 F.2d at 120.

It appears likely that Plaintiffs can demonstrate a substantial similarity of ideas between their Mothwing Gameday pattern and Defendants' Big Game Camo pattern. The Court has closely examined the details of each of the patterns and finds the following similarities: both patterns depict images of tree branches, twigs, and leaves; the backgrounds of both patterns consist of a bold, solid color that can be associated with a popular university or college; the tree branches and twigs in both patterns are white, with black details providing the appearance of shadows and depth; the leaves in both patterns are realistic and are various shades of brown, appearing as though they have already fallen from the tree; the images are presented naturally in both patterns, in that the branches, twigs, and leaves are not of uniform size throughout the patterns; the general size of the branches, twigs, and leaves are approximately the same in both patterns; the general ratio of branches, twigs, and leaves to background is approximately the same in both patterns; and both patterns include the logo of the creating company, and, in each of the

5

patterns, that logo is somewhat hidden or blended into the background. The similarities between the detail of the Mothwing Gameday pattern and the detail of the Big Game Camo pattern are numerous.

In its Opposition to Plaintiff's Motion for Preliminary Injunction, Defendant Legendary Whitetails lists differences that exist between Defendants' Big Game Camo pattern and Plaintiffs' Mothwing Gameday pattern,[1] including the following: "[Defendants'] pattern has no moth wings or moth imagery of any kind, while [Plaintiffs'] pattern contains moth images"; "[Defendants'] pattern's leaves are predominately birch leaves, with a few oak, poplar, and maple leaves, while [Plaintiffs'] pattern appears to include an artistic interpretation of solely oak leaves"; and "[Defendants'] pattern has 27 small but complete leaves, while [Plaintiffs'] pattern has only 7 complete, much larger leaves." (Opposition, doc. #35, pp.4-5). However, regardless of these differences, the overall impression that Plaintiffs' pattern and Defendants' pattern are substantially similar remains. As noted by the Eighth Circuit, "'a finding of substantial similarity is not precluded where differences in detail do little to lessen a viewer's overwhelming impression that the defendant's products are appropriations.'" *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 966 (8th Cir. 2005) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)). Thus, Defendants' list of differences does not persuade this Court to believe that it is unlikely that Plaintiffs will be able to demonstrate a substantial similarity of ideas between their Mothwing Gameday pattern and Defendants' Big Game Camo pattern.

---

[1]The Court notes that Plaintiffs dispute some of these "differences." For example, Plaintiffs argue that Defendants incorrectly assert that the leaves in Plaintiffs' pattern are based on an artist's rendering, when the leaves actually originated from digital photographs, like the leaves in Defendants' pattern. Plaintiffs make similar arguments with respect to three other alleged differences, and the Court finds these arguments persuasive.

It also appears likely that Plaintiffs can demonstrate a substantial similarity of expression between their Mothwing Gameday pattern and Defendants' Big Game Camo pattern. To determine whether there is a substantial similarity of expression, the Court is to consider how an ordinary, reasonable person might respond to Plaintiffs' Mothwing Gameday pattern and Defendants' Big Game Camo pattern. Although the ultimate conclusion regarding how an ordinary, reasonable person would respond to the patterns is left to the trier of fact, this Court believes that Plaintiffs are likely to succeed. There is ample evidence of confusion between the Mothwing Gameday pattern and the Big Game Camo pattern. For example, Defendant Zephyr Grafix, Inc. included a photograph of a Mothwing Gameday hat in promotional materials for the Big Game Camo line. The Court assumes that this inclusion was made in error, due to the fact that the two types of hats look so much alike; to assume otherwise would insinuate that Defendant Zephyr was engaged in intentional manipulation and misrepresentation. Additionally, retailers that are not involved in this litigation have demonstrated a tendency to mix up the two hats, and Plaintiffs have fielded numerous inquiries regarding the Big Game Camo line. This confusion suggests that ordinary, reasonable persons would believe that the two patterns are substantially similar, and that the Mothwing Gameday hats are the same consumer products as the Big Game Camo hats. Thus, the Court concludes that Plaintiffs will likely be able to demonstrate a substantial similarity of expression between the two patterns.

Defendants spend most of their Memoranda in Opposition to Plaintiffs' Motion for Preliminary Injunction arguing that the Court should "filter out" certain unprotectable elements of Plaintiffs' Mothwing Gameday pattern before determining whether there is substantial similarity. However, the Eighth Circuit has specifically rejected this approach. *See Taylor Corp.*, 403 F.3d

at 966 (rejecting the defendant's argument that the district court should have distinguished between protectable and unprotectable elements before making a determination regarding substantial similarity, "because it is improper to perform analytic dissection or 'filtering,' when conducting the 'intrinsic' step"). Because the Eighth Circuit has rejected the reasoning advocated by Defendants, this Court must also reject that reasoning.

The Court concludes that it is likely that Plaintiffs will be able to demonstrate substantial similarity between Plaintiffs' Mothwing Gameday pattern and Defendants' Big Game Camo pattern. Because Defendants do not contest the other elements required to establish copyright infringement, there is a high probability that Plaintiffs will succeed on the merits of their copyright infringement claim against all Defendants.[2] This factor weighs in favor of Plaintiffs.

### B.     THREAT OF IRREPARABLE HARM TO PLAINTIFFS

The next factor to consider is the threat of irreparable harm to Plaintiffs. In order for there to be an irreparable harm in a particular case, "[t]he injury must be of such a nature that money damages alone do not provide adequate relief." *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 986 (8th Cir. 2008). "However, a valid monetary damage claim does not automatically preclude the issuance of injunctive relief, . . . as money damages may not fully compensate a moving party for intangible injuries, such as injury to goodwill and business relationships with customers." *Talkisp Corp. v. Xcast Labs., Inc.*, 2005 WL 3466618, at *8 (N.D. Iowa Dec. 19, 2005).

---

[2]Defendant Zephyr Grafix, Inc. argues in its Memorandum in Opposition that Plaintiffs are not likely to prevail on the merits against the company because it did not make the pattern or the fabric at issue. Defendant Zephyr Grafix's argument fails because the company uses the patterned fabric at issue to produce allegedly infringing products. This is sufficient to be subject to a copyright infringement lawsuit.

In this case, the Court believes that the threat of irreparable harm to Plaintiffs is substantial. Plaintiffs assert that they are threatened with irreparable harm by Defendants in three ways: "Defendants' infringement weakens [Plaintiffs'] licensing ability, it jeopardizes [Plaintiffs'] overall reputation and goodwill, and it ruins [Plaintiffs'] customer base." (Pls.' Memo. in Support of Mtn., doc. #6, p.16). This Court agrees that Plaintiffs' licensing ability will be diminished if the requested relief is not granted. The purpose of seeking copyright protection for a particular product is to be able to control the use of that product, and Defendants' actions limit Plaintiffs' ability to do just that. *See Interscope Recordings v. Tabor*, 2009 WL 708322, at *2 (W.D. Ark. Mar. 16, 2009) ("Defendant has also usurped Plaintiffs' exclusive control over the method and means of handling their unique intellectual property."). The Court also agrees that continuing the status quo will likely result in damage to Plaintiffs' reputation and goodwill, which may in turn result in a diminished customer base. Plaintiffs have enjoyed their reputation of being innovators, who offer their customers unique products. However, as discussed above, there is confusion in the marketplace between Plaintiffs' products and those of Defendants. This confusion will certainly cause harm to Plaintiffs' reputation, the effects of which will be felt through a diminished customer base. Moreover, "[i]n copyright infringement cases, the general rule is that a showing of a *prima facie* case raises a presumption of irreparable harm." *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1229 (8th Cir. 1986). As set forth in the preceding section, Plaintiffs have made a strong case for copyright infringement and are thus entitled to receive this presumption.

Defendants argue that Plaintiffs cannot legitimately claim that they will be irreparably harmed in the time that passes before this case goes to trial because they waited almost an entire

9

year before bringing their copyright infringement lawsuit. Defendants are correct that a presumption of irreparable harm is negated if the plaintiff unreasonably delayed in seeking relief. *See, e.g.*, *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999) (finding that the plaintiff's delay in objecting to the defendant's use of allegedly infringing product "belies any claim of irreparable injury pending trial"); *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) ("presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief"). However, existing case law regarding precisely how much time amounts to an unreasonable delay is very inconsistent. *See Candle Factory, Inc. v. Trade Assocs. Group, Ltd.*, 23 F.App'x 134, 137-39 (4th Cir. 2001) (1 year delay was reasonable); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (9th Cir. 1996) (4 month delay was reasonable); *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124-25 (2d Cir. 1994) (6 month delay to discover alleged infringement and 2 week delay after completing testing were both reasonable); *King v. Innovation Books, a Div. of Innovative Corp.*, 976 F.2d 824, 831 (2d Cir. 1992) (8 month delay, during which the plaintiff made consistent objections to the defendant, was reasonable); *Esbin & Alter, LLP v. Zappier*, 2010 WL 391830, at *3 (S.D. N.Y. Feb. 4, 2010) (3 month delay to conduct good faith investigation was reasonable); *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 2009 WL 230562, at *5 (E.D. Mich. Jan. 30, 2009) (6 month delay was reasonable); *Mandrigues v. World Sav., Inc.*, 2008 WL 5221074, at *4 (N.D. Cal. Dec. 12, 2008) (14 month delay was reasonable); *Inst. for Motivational Living, Inc. v. Sylvan Learning Ctr., Inc.*, 2008 WL 379654, at *4 (W.D. Pa. Feb. 8, 2008) (4½ month delay to conduct good faith investigation of merits was reasonable); *Coquico, Inc. v. Rodriguez-Miranda*, 2007 WL 3034259, at *4-*5 (D. P.R. Oct. 15, 2007) (delay

of a little more than one year was reasonable); *Topline Corp. v. 4273371 Can., Inc.*, 2007 WL 2332471, at *13 (W.D. Wash. Aug. 13, 2007) (ten month delay while attempting to resolve dispute without court intervention was reasonable); *Control Data Sys., Inc. v. Infoware, Inc.*, 903 F. Supp. 1316, 1325 (D. Minn. 1995) (delay of several months was reasonable in complex case). *But see Richard Feiner & Co. v. Turner Entm't Co.*, 98 F.3d 33, 35 (2d Cir. 1996) (18 month delay due to ignorance of competitor's license was unreasonable); *Int'l Ass'n of Plumbing & Mech. Officials v. Int'l Conference of Bldg. Officials*, 1996 WL 117447, at *2 (9th Cir. 1996) (7 month delay in seeking preliminary injunction after filing lawsuit was unreasonable); *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (9 month delay in filing copyright infringement lawsuit and additional 4 month delay in seeking preliminary injunction was unreasonable); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) (10 week delay after discovering extent of alleged infringement was unreasonable); *Two Kids From Queens, Inc. v. J&S Kidswear, Inc.*, 2009 WL 5214497, at *3 (E.D. N.Y. Dec. 30, 2009) (2 month delay in filing lawsuit and additional 3 month delay in seeking preliminary injunction was unreasonable); *Poon v. Roomorama, LLC*, 2009 WL 3762115, at *6 (S.D. N.Y. Nov. 10, 2009) (5 month delay after negotiations stalled was unreasonable); *Gowan Co. v. Aceto Agric. Chems.*, 2009 WL 2028387, at *5 (D. Ariz. July 10, 2009) (3 month delay was unreasonable); *H.D. Vest, Inc. v. H.D. Mgmt. & Servs., LLC*, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009) (5 month delay was unreasonable); *Protech Diamond Tools, Inc. v. Liao*, 2009 WL 1626587, at *6 (N.D. Cal. June 8, 2009) (3 year delay was unreasonable); *Scott-Blanton v. Universal City Studios Prods. LLLP*, 495 F. Supp. 2d 74, 80 (D. D.C. 2007) (14 month delay was unreasonable).

In this case, Plaintiffs first saw samples of the Big Game Camo pattern on hats at a trade show in January of 2009. Plaintiffs argue that it was not until the late summer or early fall of 2009 that they realized the full extent of the alleged infringement. It was at this time that Defendant Legendary Whitetails issued a catalog that included clothing and arrow wraps made with the Big Game Camo pattern. Also at this time, Plaintiffs began receiving inquiries from customers regarding whether the Big Game Camo pattern was affiliated with Plaintiffs' Mothwing Gameday pattern. Plaintiffs filed the pending lawsuit on December 15, 2009, and filed the pending Motion for Preliminary Injunction on December 23, 2009.

The Court finds that Plaintiffs' decision not to file a copyright infringement lawsuit immediately after seeing the hats at the trade show was reasonable. At that time, Plaintiffs believed that the Big Game Camo pattern was being used exclusively on hats, and did not know the extent of possible infringement. *See Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994) ("Delay in filing suit will not rebut the presumption of irreparable harm if the plaintiff does not know how severe the infringement is."). Thus, the remaining issue is whether the three or four months that passed between Plaintiffs' discovery of the extent of the Big Game Camo line and the seeking a preliminary injunction amounts to an unreasonable delay. Considering that the authority on this topic is rather inconsistent, the Court must consider what events occurred during those three or four months. According to Plaintiffs, "[s]hortly after learning that the marketplace was confusing the Big Game Camo pattern with the Gameday pattern, [Plaintiffs] contacted [their] present counsel who began its due diligence into the merits of the suit." (Pls.' Reply, doc. #47, p.10). Spending several months completing due diligence and preparing for filing the pending lawsuit is a reasonable use of time. The Court certainly does not

want to discourage potential plaintiffs from engaging in a good faith investigation or meaningful negotiation before filing a lawsuit or seeking a preliminary injunction. Thus, the Court concludes that any delay before Plaintiffs filed their Motion for Preliminary Injunction was reasonable, and does not negate the presumption of irreparable harm in this case. This factor weighs in favor of granting the requested injunction.

### C. BALANCE OF HARMS

The Court must now weigh the substantial threat of irreparable harm to Plaintiffs against the harm that Defendants would suffer if the Court were to grant the requested preliminary injunction. The Court acknowledges that granting the preliminary injunction requested by Plaintiffs will cause harm to Defendants in various capacities. However, the harms alleged by Defendants, including reduced sales and loss of investment and man hours, are monetary harms that are not as serious as the type of potential harms Plaintiffs face. As set forth above, the potential harm to Plaintiffs' good will and reputation is irreparable. Thus, the Court concludes that the potential harm to Plaintiffs if the preliminary injunction is not granted outweighs any harm that Defendants would suffer if it is granted. This factor weighs in favor of granting the preliminary injunction.

### D. PUBLIC INTEREST

Finally, the Court considers the public interest, and concludes that it is served by granting the requested injunction. Encouraging and protecting creative work is certainly in the public interest, as is preventing confusion in the marketplace. This factor also weighs in favor of granting the preliminary injunction.

### E. CONCLUSION

Each of the four *Dataphase* factors weighs in favor of Plaintiffs, and in favor of granting their requested preliminary injunction. The Court will grant Plaintiffs' Motion for Preliminary Injunction, and will preliminarily enjoin Defendants from manufacturing, printing, distributing, selling, offering for sale, advertising and/or promoting fabrics with designs based on, derived from and/or substantially similar to the Mothwing Gameday pattern.

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." If, after a full trial on the merits, it is determined that this injunction was wrongfully issued because Plaintiffs were not in fact entitled to injunctive relief, Defendants will be entitled to recover lost income and other damages or costs that resulted from the erroneous injunction. The Court believes that a $5,000.00 bond shall adequately protect Defendants. Therefore, Plaintiffs shall post a bond of $5,000.00 as security.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction Pursuant to Rule 65(a) [doc. #5] is **GRANTED**. Defendants are preliminarily enjoined as set forth above.

**IT IS FURTHER ORDERED** that Plaintiffs shall post an injunction bond of $5,000.00.

Dated this 4th Day of May, 2010.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE