UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONARCH PRODUCTIONS, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:09CV02049 ERW |
| ) | |
| ZEPHYR GRAFIX, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Legendary Whitetails' Motion for Partial Summary Judgment of No Copyright Infringement [doc. #34]; Defendant A & E Group's Motion for Summary Judgment [doc. #39]; Defendant Barry Horn's Motion for Summary Judgment [doc. #41]; and Zephyr's Motion for Partial Summary Judgment of No Copyright Infringement [doc. #45].

### I. PROCEDURAL BACKGROUND

On December 15, 2009, Plaintiffs Monarch Productions, LLC, Monarch Investor, LLC, and Dominant DNA, LLC *f/k/a* Mothwing, LLC (collectively "Plaintiffs") filed a lawsuit against Defendants Zephyr Grafix, Inc., A & E Group, LLC, L.H. Holdings, Inc. *d/b/a* Legendary Whitetails, and Barry Horn (collectively, "Defendants"). The Complaint alleges copyright infringement against all Defendants; contributory copyright infringement against all Defendants; breach of contract against Defendant Zephyr Grafix; interference with business relation and expectancy against Defendants A & E Group, Legendary Whitetails, and Barry Horn; and violation of the Lanham Act and unfair competition against Defendants Zephyr Graphix and Legendary Whitetails. Shortly after filing the Complaint, on December 23, 2009, Plaintiffs filed a

Motion for Preliminary Injunction, seeking an Order from this Court, "enjoining Defendants from manufacturing, printing, distributing, selling, offering for sale, advertising and/or promoting fabrics with designs that are based on, derived from and/or substantially similar to the Gameday patterns." (Mtn. for Prelim. Inj., doc. #5, p.1). On May 4, 2010, the Court granted Plaintiffs' Motion for Preliminary Injunction, finding that "[e]ach of the four *Dataphase* factors weighs in favor of granting their requested preliminary injunction." (Order, doc. #66, p.14).

In conjunction with their Opposition to Plaintiff's Motion for Preliminary Injunction, Defendant Legendary Whitetails filed the pending Motion for Partial Summary Judgment of No Copyright Infringement [doc. #34]. Defendant A & E Group, Defendant Barry Horn, and Defendant Zephyr Graphix each filed individual Motions for Partial Summary Judgment [docs. #39, 41, 45, respectively], adopting the facts, exhibits, arguments, and authority submitted in Defendant Legendary Whitetails' Motion for Partial Summary Judgment. The Court will now address these pending Motions.

## II. STATEMENT OF FACTS[1]

Plaintiffs Monarch Productions, LLC, Monarch Investors, LLC, and Dominant DNA, LLC, formerly known as Mothwing, LLC (collectively, "Plaintiffs"), are all limited liability

---

[1] The Court's recitation of the facts is based on: Defendant Legendary Whitetails' Statement of Uncontroverted Material Facts in Support of its Motion for Partial Summary Judgment on Copyright Infringement [doc. #36]; Plaintiffs' Statement of Uncontroverted Material Facts in Support of its Opposition to Defendants' Motion for Partial Summary Judgment of No Copyright Infringement [doc. #56]; Plaintiffs' Additional Facts Supporting Summary Judgment of Copyright Infringement or at Least Raising a Genuine Issue of Material Fact [contained in doc. #56]; and Defendant Legendary Whitetails' Response to Plaintiffs' Statement of Additional Facts Supporting Summary Judgment of Copyright Infringement or At Least Raising a Genuine Issue of Material Fact [doc. #63]. The Court also considered the exhibits submitted by the Parties, where appropriate.

companies, organized and existing under the laws of Georgia, and having a place of business at 1216 North Wall Street, Calhoun, Georgia 30701.  Defendant L.H. Holdings, Inc. *d/b/a* Legendary Whitetails ("Defendant Legendary Whitetails") is a corporation existing under the laws of Wisconsin, having its principal place of business in Slinger, Wisconsin.

Plaintiffs designed a fashion camouflage pattern with sticks of a bright white color with black and gray texture, shadowing, leaves, and a colored background.  Plaintiffs market a line of fashion camouflage patterns that, as explained on their website, are "derived from the cryptic colorizations and mimicry associated with certain moth species."  The patterns at issue are called "Gameday BL/WT2," "Gameday RD/WT1," "Gameday BK/WT2," "Gameday RD/WT2," and "Gameday OR/WT1" (collectively, "Mothwing Gameday patterns").  The Mothwing Gameday patterns at issue at least include the selection and arrangement of the following embellished design elements: sticks, leaves, branches, colored background, speckles, moths, and the Mothwing logo.

Defendants assert that Plaintiffs were not the first camouflage company to offer camouflage patterns using sticks and leaves, pointing to camouflage patterns containing sticks and leaves that have been marketed by other non-party companies for many years.  In response, Plaintiffs admit that they were not the first company to offer photo-realistic sticks and leaves on camouflage intended for field use, but assert that they were the first company to design artistic sticks and leaves on fashion novelty camouflage.  Plaintiffs also admit that they were not the first company to offer color camouflage or fashion camouflage, but assert that they were the first company to design artistic sticks and leaves on fashion camouflage in various colors, including pink and blue.

3

Defendant Legendary Whitetails also developed a fashion camouflage pattern, called the Big Game Camo pattern. According to Defendants, Legendary Whitetails spent many months developing the Big Game Camo pattern. Defendants assert that Legendary Whitetails used actual photographs to create the Big Game Camo pattern because it wanted a realistic camouflage pattern with a bold fashion look, and that they chose to use birch trees, a species common in most parts of the country, in order to develop a pattern that was not specific to any particular geographic area. Defendants also assert that in the process of developing its pattern, Legendary Whitetails shot hundreds of photographs of natural elements, assembled a large library of photographic images, and then went through a complicated process of getting the images to print accurately on fabric using a 12 color printing process and selecting images to create an aesthetically pleasing balance of elements in a pattern that could be repeated. In response to these assertions, Plaintiffs argue that Defendants have not offered adequate supporting evidence, and that Plaintiffs have not had a sufficient opportunity to conduct discovery to examine the veracity of the assertions.

Plaintiffs and Defendants generally disagree on any comparison of the Big Game Camo pattern and the Mothwing Gameday pattern. For obvious reasons, Defendants focus on the differences that exist between the two patterns, while Plaintiffs focus on the similarities. Defendants assert that the Mothwing Gameday patterns had limited usefulness because they included large white and brown leaf expanses in some sections of the fabric, the color backgrounds that were available were limited, and the pattern could only be printed on limited types of fabric. Defendants point out that the Big Game Camo pattern has no moth wings or moth wing imagery They also assert that the Big Game Camo pattern was created from digital

4

photographs of real trees and leaves, while the Mothwing Gameday pattern is an artist's abstract rendering of sticks and leaves. They state that the leaves in the Big Game Camo pattern are predominately birch leaves, with a few oak, poplar, and maple leaves, while the Mothwing Gameday pattern appears to only contain oak leaves, and no birch leaves, maple leaves, or poplar leaves. Further, the Big Game Camo pattern has 27 small but complete leaves, while the Mothwing Gameday pattern has only 7 complete, much larger leaves. Defendants state that the Big Game Camo pattern depicts live three-dimensional tree branches reaching up into the sky and three-dimensional falling leaves, which creates a primarily diagonal pattern. On the other hand, the Mothwing Gameday pattern has abstract, two-dimensional sticks and leaves that appear to be lying on the forest floor, and that create a vertical pattern. Finally, with respect to colors, Defendants assert that the Big Game Camo pattern uses twelve colors to print, and has a pure color background that creates a sharp contrast with the white of the birch branches, while the Mothwing Gameday pattern uses only eight colors, and has a color background that is mottled with white and grey rubble.

Plaintiffs, on the other hand, state that both the Mothwing Gameday and the Big Game Camo patterns were designed to be sharp, sporty, and fashionable, and that both patterns are bold fashion camouflage patterns that are printed on fabric intended for the same consumer use. Plaintiffs assert that both patterns depict bright white tree branches with brown leaves on a single color, textured background. Plaintiffs conclude by noting that the Big Game Camo pattern was developed on the same consumer products for the same consumer, using the same natural elements in the same color scheme as that used in the Mothwing Gameday pattern.

5

The Court has received fabric samples from the Parties, one printed with the Mothwing Gameday pattern, marked Defendants' Exhibit A at the February 25, 2010 Preliminary Injunction hearing, and one printed with the Big Game Camo pattern, marked Defendants' Exhibit B at the February 25, 2010 Preliminary Injunction hearing. The Court has closely examined these fabric samples.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof on a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e)(2). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavits and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002); Fed. R. Civ. P. 56(e)(1). The non-moving party does not need to produce "evidence in a form that would be admissible at trial in order to avoid summary judgment"; "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred." *Celotex*, 477 U.S. at 324.

To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

### IV. DISCUSSION

Defendants request the Court enter partial summary judgment in their favor on Plaintiffs' claims of copyright infringement. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Defendants do not dispute that Plaintiffs own valid copyrights on the Mothwing Gameday pattern. Thus, the

7

only issue that the Court must address is whether Defendants copied constituent elements of the Mothwing Gameday pattern in creating their Big Game Camo pattern.

A party can use direct evidence to demonstrate that constituent elements of the original work were copied by the allegedly infringing work. When there is no direct evidence of copying, as in this case, "[c]opying may be established . . . by showing that the defendants had access to the copyrighted materials and showing that substantial similarity of ideas and expression existed between the alleged infringing materials and the copyrighted materials." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006) (citing *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987)). Defendants do not dispute that they had access to the copyrighted materials, so this Court need only examine the substantial similarity issue. Indeed, the only argument Defendants make in support of their Motions for Partial Summary Judgment is that their patterns are not substantially similar to Plaintiffs' patterns.

In examining the substantial similarity issue, *Hartman* instructs the Court to employ a two-step analysis. "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works." *Hartman*, 833 F.2d at 120. The extrinsic test considers "'such objective criteria as the type of artwork involved, the materials used, the subject matter, and the setting for the subject.'" *Rottlund Co.*, 452 F.3d at 731 (quoting *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989)). "Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Hartman*, 833 F.2d at 120.

Upon comparing the Mothwing Gameday pattern and the Big Game Camo pattern, the Court finds numerous objective, extrinsic similarities. As set forth by this Court in the

Memorandum and Order granting Plaintiffs' Motion for Preliminary Injunction [doc. #66], the following similarities exist: both patterns depict images of tree branches, twigs, and leaves; the backgrounds of both patterns consist of a bold, solid color that can be associated with a popular university or college; the tree branches and twigs in both patterns are white, with black details providing the appearance of shadows and depth; the leaves in both patterns are realistic and are various shades of brown, appearing as though they have already fallen from the tree; the images are presented naturally in both patterns, in that the branches, twigs, and leaves are not of uniform size throughout the patterns; the general size of the branches, twigs, and leaves are approximately the same in both patterns; the general ratio of branches, twigs, and leaves to background is approximately the same in both patterns; and both patterns include the logo of the creating company, and, in each of the patterns, that logo is somewhat hidden or blended into the background. This is sufficient to establish a similarity of ideas between the Mothwing Gameday pattern and the Big Game Camo pattern

Having found that there is similarity of ideas between the two patterns, the Court must apply an intrinsic test to determine whether there is similarity of expression. This requires the Court to consider the response of an ordinary, reasonable person to the patterns at issue in this case. *Hartman*, 833 F.2d at 120. The Court recognizes that there are many similarities between the Mothwing Gameday pattern and the Big Game Camo pattern, but there are also many differences. A jury could be persuaded to find that the two patterns are substantially similar, but it is also possible that the jury could find no substantial similarity. The Court notes that "[b]ecause substantial similarity is a close question of fact, . . . summary judgment [in copyright infringement cases] has traditionally been frowned upon." *Benchmark Homes, Inc. v. Legacy Home Builders,*

*L.L.C.*, 2006 WL 994566, at *3 (D. Neb. Jan. 27, 2006). "[S]ummary judgment in a copyright infringement case is appropriate if reasonable minds *could not differ* as to the absence of substantial similarity in the expression." *Hartman v. Hallmark Cards, Inc.*, 639 F. Supp. 816, 818 (W.D. Mo. 1986) (emphasis added). Because reasonable minds *could* differ on the issue of similarity of expression, this Court finds that there are genuine issues of material fact that preclude summary judgment on Plaintiffs' copyright infringement claims. *See Benchmark Homes*, 2006 WL 994566, at *5 ("In light of these differences in the main floor and in the overall appearance of the design, there are disputed issues of material fact that preclude summary judgment on the issue of whether the home designs are substantially similar."); *see also Plan Pros, Inc. v. Zych*, 2009 WL 5213997, at *4 (D. Neb. Dec. 22, 2009) (denying motion for summary judgment upon finding genuine issues of material fact with respect to substantial similarity); *Rottlund Co. v. Pinnacle Corp.*, 2004 WL 1879983, at *24 (D. Minn. Aug. 20, 2004) ("[T]he Court finds that a reasonable juror could find that the total look and feel of how the drawings selected, arranged, and coordinated the elements is substantially similar, but a reasonable juror would not be compelled to so find. Thus, no party is entitled to summary judgment on the issue of substantial similarity (the intrinsic analysis)."). The Court will deny the pending Motions for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Legendary Whitetails' Motion for Partial Summary Judgment of No Copyright Infringement [doc. #34]; Defendant A & E Group's Motion for Summary Judgment [doc. #39]; Defendant Barry Horn's Motion for Summary Judgment [doc.

#41]; and Zephyr's Motion for Partial Summary Judgment of No Copyright Infringement [doc. #45] are **DENIED**.

Dated this 22nd Day of September, 2010.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE